[Civ. No. 1231. Fourth Appellate District.—January 18, 1935.]

A. H. SECCOMBE, Appellant, v. VICTOR DIONNE, Defendant; JOE SALLER, Respondent.

Farnsworth, Burke & Maddox for Appellant.

W. W. Hahesy and Bradley & Bradley for Respondent.

ALLYN, J., *pro tem.*—In an action for unlawful detainer brought in January, 1929, the respondent Saller was, on motion of plaintiff and appellant, appointed receiver of certain real property with powers and duties prescribed as follows:

"That as such receiver he take immediate charge and possession of all of the real property described in the complaint on file herein pending the trial and final determination of this action; that he harvest and sell the remaining portion of the crop of cotton now standing and growing thereon; that he preserve and maintain said real property, including the wells and pumping plants thereon; that he cultivate and care for all of said real property, and that he harvest, sell and deliver all crops grown thereon and receive the rents, issues and profits of all said real property, and that he do any and all other things necessary and which are required or ordered by the Court."

Saller qualified as such receiver and the property involved was in his possession and under his control as receiver until April 28, 1931, when an order was made discharging it from his control. On March 10, 1932, he was ordered to show cause why he should not file a report and account of his receivership, and in response to this order filed a verified document termed an Account and Petition to be Discharged, in which he set up that after his qualification and appointment as a receiver he joined with plaintiff (appellant) in the execution of a cotton lease and crop waiver to one Revia, as tenant for the 1929 season; that the entire 1929 crop was mortgaged to a finance company; and that he, as receiver, "had nothing to do with the funds realized from the sale of said products and neither did he receive any funds for said purpose from said plaintiff or anyone else"; that he exercised general supervision over the cotton crop until July of 1929, when he was led to believe that he was discharged; that in 1931, as a matter of accommodation, he joined with the plaintiff in executing another cotton lease. The balance of his report and account deals exclusively with the matter of receiver's fees and attorney's fees. Exceptions were filed and upon a hearing thereof the trial court made its order settling the account and discharging the receiver and his surety.

Appellant rests his appeal upon two specifications of error: first, that the trial court erred in treating the document as a final account and in allowing and settling it as a final account; second, that the court erred in discharging the receiver and his bond without filing a proper account.

■ It is undoubtedly the duty of a receiver, as it is the duty of all fiduciaries, to keep accurate accounts, and he may in a proper case be held liable for failure so to do. (Clark on Receivers, sec. 400.) ■ Under his order of appointment it was Saller's duty to take charge of the property and to harvest and sell the remaining portion of the crop then standing or growing upon it; to harvest, sell and deliver all crops grown thereon; and to receive the rents, issues and profits thereof. What is his account of the execution of these duties? Merely that, as receiver, he joined with the plaintiff in the execution of a cotton lease and crop waiver; that the entire crop was mortgaged to a finance company; and that he had nothing to do with the proceeds of the crop. Yet it appears from the record of the hearing on the so-called account that the receiver did actually harvest and sell some part of the 1928 crop, paid some expenses out of the proceeds thereof, and had a balance left. It further appears that, with the consent of plaintiff, the receiver made a cropping agreement with Revia for 1929, by which one-fifth of that crop should have been delivered into his hands as receiver and that later this crop, together with a crop on other land not the subject of the receivership, was mortgaged by the receiver to secure advances in the sum of $8,200; and that the receiver signed a "waiver of liens and claims" whereby all claims of the lessor were made subordinate to the lien of the crop mortgage. The plaintiff did not join in the execution of the mortgage or waiver. This is the crop covered by the so-called account with the statement "that the entire cotton crop was mortgaged to the finance company that financed the grower of the same, and that your petitioner herein had nothing to do with the funds realized from the sale of said products and neither did he receive any funds for said purpose from said plaintiff or anyone else". There is testimony that some 156 bales of cotton were produced on this land in 1929.

"The primary idea of account, computation, whether we look to the proceedings of courts of law or of equity, is some matter of debt and credit, or demands in the nature of debt and credit between the parties. It implies that one is responsible to another for moneys or things, either

on the score of contract, or some fiduciary relation of a public or private nature, created by law or otherwise." (Words & Phrases, 1st Series.) Certainly in this case there were demands in the nature of debits and credits between plaintiff, who had in the meantime been adjudged owner and entitled to the possession of the land in question, and the receiver, the latter being responsible for moneys and things on the score of the fiduciary relation existing. They were mutual demands and liabilities between the parties in the matter of debits and credits. The receiver here, as an officer of the court, might well have been accountable to the defendant in the action if the main litigation had resulted differently. It is impossible, on the basis of the document filed as an account, for the court to determine the rights and obligations of the parties.

It follows that since the instrument filed as a final account cannot as a matter of law be considered as an account it was error to discharge the receiver and release the surety on his bond from further liability.

■ There has been some question raised on this appeal as to the good faith of the receiver and as to the action of the plaintiff in attempting to exercise control over the properties of the receivership.

It appears quite plainly from the record that Saller, at the time of his appointment and at the time of the execution of the crop mortgage and waiver of liens and claims, was in the employ of the mortgagee; that he made the affidavit of good faith of said mortgagee as its agent; and also executed the waiver of liens as receiver and without order of court. This record of itself suggests that his account and report should receive the closest scrutiny, especially in view of the fact that the crop mortgage, executed by him as receiver and without a court authorization, blankets the crops to be produced on the land in the receivership with other lands under lease by the same tenant mortgagor. Without passing upon the validity of these acts of the receiver, they do furnish additional reasons why an accurate and complete accounting should be had.

■ It also appears that plaintiff was more or less active in the management of the receivership. This does not alter the fact that the receiver, until the final determina-

tion of the litigation, held the property as an officer of the court for the equal benefit of all the persons who might finally be adjudged to have rights in it (22 Cal. Jur., pp. 490, 491), and that his conduct was subject always to the control of the appointing court and not of the parties to the action. (*De Forrest* v. *Coffey*, 154 Cal. 444 [98 Pac. 27]; *Atlantic Trust Co.* v. *Chapman*, 188 U. S. 741 [23 Sup. Ct. 849, 47 L. Ed. 678].) It would seem clear that no party to an action would be permitted to lead a receiver into error and then hold him liable for loss suffered thereby. These are matters, however, to be determined by the trial court upon the hearing of a proper account.

The order appealed from is reversed.

Barnard, P. J., and Marks, J., concurred.